**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
GREGG J. PACCHIANA,              )
                                 )
          Plaintiff,             )
                                 )
     v.                          )        1:20cv859
                                 )
GLENN PACCHIANA,                 )
                                 )
          Defendant.             )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion to Dismiss" (Docket Entry 10) (the "Defendant's Motion"). For the reasons that follow, the Court should deny Defendant's Motion.

**BACKGROUND**

Asserting breach of contract and unjust enrichment, Gregg J. Pacchiana (the "Plaintiff") initiated this action against Glenn Pacchiana (the "Defendant"). (Docket Entry 1 (the "Complaint"), ¶¶ 1-3, 42-70.) In particular, the Complaint alleges:

"This dispute arises out of Defendant's breach of a contractual agreement to pay moneys owed by Defendant to Plaintiff in connection with multiple loans made by Plaintiff to Defendant and/or services provided by Plaintiff to Defendant." (Id., ¶ 1.) The origins of the dispute date back to 2006, when "Defendant recommended that Plaintiff and Defendant invest in a company that would be named T-Bird Partners, LLC ('T-Bird Partners')" (id., ¶ 7). Plaintiff and Defendant planned to form the entity in order "to purchase two existing golf courses located in Saratoga, New

York, and to develop a new 18-hole golf course with housing, a club house and a catering hall." (Id., ¶ 8.) Given Defendant's then-ongoing divorce and resulting financial situation, Plaintiff loaned Defendant part of the initial capital investment for T-Bird Partners. (See id., ¶¶ 10-13.) In connection with such loan, Defendant agreed "to . . . pay interest on the principal balance of the loan at the customary family interest rate, and . . . to pay off the principal balance of the loan, plus interest once Defendant's divorce settlement was finalized and Defendant was in a financial position to pay." (Id., ¶ 13.)

Plaintiff and Defendant signed the operating agreement for T-Bird Partners (the "Operating Agreement") on September 27, 2006, establishing the entity as a North Carolina limited liability company based in Chapel Hill. (Id., ¶¶ 14-15.) Thereafter, Plaintiff loaned Defendant additional funds, for a total of $339,545.02, "to cover Defendant's capital and investment contribution obligations for the T-Bird Partners development due to Defendant's financial inability to make any such payments at that point in time." (Id., ¶ 16.) In exchange for the additional loan, Defendant agreed to a modification of his original repayment obligation, insofar as he promised "to pay off the principal balance of the loan, plus interest via profits once T-Bird Partners became a success, or in the alternative; . . . if T-Bird Partners was not successful, to pay off the principal balance of the loan, plus interest upon demand by Plaintiff." (Id., ¶ 17.) Such

-2-

agreement, together with the original loan, constitutes the "T-Bird Contract."  (Id.)

"T-Bird Partners ultimately never became a profitable venture and was administratively dissolved on January 14, 2016."  (Id., ¶ 18.)  "On May 16, 2019, pursuant to the T-Bird Contract, Plaintiff demanded that Defendant repay the full amount owed on the T-Bird Contract, which amounted to $339,545.02 in principal plus interest . . . ."  (Id., ¶ 21.)  After Defendant failed to comply (id., ¶ 22), Plaintiff and Defendant exchanged email correspondence in August 2019, at which time "Defendant made a new promise [(the '2019 Contract')] to pay his existing debt to Plaintiff" (id., ¶ 23).  More specifically, "Defendant agreed to pay Plaintiff . . . $330,143.49 in order to resolve the dispute concerning the outstanding debt owed under the T-Bird Contract and in consideration for Plaintiff's agreement to attend and provide valuable services at an upcoming meeting [(the 'Meeting')] in New York on August 28-29, 2019 concerning unrelated family business matters . . . ."  (Id., ¶ 24.)  The Meeting involved "review [of the] financial information of Thalle Industries, a company which is co-owned by [] Defendant, [] Pla[i]ntiff and their sister for a possible buy back of her shares in the business by the company."  (Id., ¶ 25.)  "Defendant . . . expressly agreed to Plaintiff's condition that the $330,143.49 amount [would] be paid via check before Plaintiff's departure from New York so that it could be deposited when Plaintiff returned to North Carolina on or around August 30, 2019."  (Id., ¶ 30.)

-3-

Plaintiff participated in the Meeting (see id., ¶¶ 32–34), which resulted in "a transaction to Defendant's benefit in excess of $15 million" (id., ¶ 34). After the Meeting, Plaintiff met with Defendant, who proposed an alternate means of repaying part of the amount owed under the 2019 Contract. (See id., ¶¶ 35–37.) Plaintiff refused (id., ¶ 38), and Defendant then agreed to "write [a] personal check for the $330,143.49 amount and . . . overnight [the] same to Plaintiff no later than the following Monday, September 2, 2019" (id., ¶ 39). Plaintiff acceded (id., ¶ 39), but despite "numerous demands . . ., Defendant failed and refused to make payment" (id., ¶ 41).

In connection with the foregoing, the Complaint alleges breach of the 2019 Contract (id., ¶¶ 42–48) and the following claims in the alternative: breach of the T-Bird Contract as modified in 2019 (id., ¶¶ 49–57), breach of the T-Bird Contract (id., ¶¶ 58–65), and quantum meruit/unjust enrichment (id., ¶¶ 66–70). Plaintiff attached as exhibits to the Complaint copies of the August 2019 email correspondence relating to the 2019 Contract. (See Docket Entries 1-1, 1-2.)

Instead of answering the Complaint, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"), or, alternatively, to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"). (Docket Entry 10 at 1–2; see also Docket Entries 10-1 (declaration), 11 (supporting memorandum).) Plaintiff responded in opposition,

-4-

contending that "Defendant waived his right to contest the existence of personal jurisdiction by executing a North Carolina forum[-]selection clause" (Docket Entry 15 at 6 (emphasis omitted and standard capitalization applied)) and attaching as an exhibit the Operating Agreement containing such clause (see Docket Entry 15-1, ¶ 12.6). Furthermore, Plaintiff has insisted that Defendant's contacts with North Carolina "warrant the exercise of specific personal jurisdiction over [him]." (Docket Entry 15 at 8.) As concerns the alternative request to transfer, Plaintiff has asserted that the Operating Agreement's forum-selection clause likewise defeats such effort and that Defendant has failed to demonstrate the propriety of transfer. (See id. at 18–23.) Plaintiff also tendered a sworn declaration in support of the foregoing assertions. (See Docket Entry 15-2 ("Plaintiff's Declaration").) Defendant replied, attaching additional declarations. (See Docket Entries 19, 20, 20-2, 20-3.)

## DISCUSSION

### I. Personal Jurisdiction

### A. Relevant Standards

When a defendant challenges the existence of personal jurisdiction under Rule 12(b)(2), "the plaintiff ultimately [must] prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). "If a court considers a pretrial personal jurisdiction challenge without conducting an evidentiary hearing, though, the plaintiff need only 'mak[e] a prima facie showing in support of

-5-

[the] assertion of jurisdiction.'" <u>Wolfe Fin. Inc. v. Rodgers</u>, No. 1:17cv896, 2019 WL 203183, at *4 (M.D.N.C. Jan. 15, 2019) (unpublished) (quoting <u>Universal Leather, LLC v. Koro AR, S.A.</u>, 773 F.3d 553, 558 (4th Cir. 2014)). In deciding whether the plaintiff has made such showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." <u>Combs</u>, 886 F.2d at 676. Under such circumstances, "a court may consider matters outside the pleadings . . ., although the court must continue to draw all reasonable inferences in the light most favorable to the plaintiff," <u>IHFC Props., LLC v. APA Mktg.</u>, 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012).

"A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." <u>Nichols v. G.D. Searle & Co.</u>, 991 F.2d 1195, 1199 (4th Cir. 1993). Moreover,

> [t]he North Carolina Supreme Court has held that [North Carolina General Statute Section] 1-75.4(1)(d) permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process. <u>See</u> <u>Dillon v. Numismatic Funding Corp.</u>, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977) ("[I]t is apparent that the [North Carolina] General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."); <u>see also</u> <u>Combs</u>, 886 F.2d at 676 n.3 (same).

*Universal Leather*, 773 F.3d at 558 (footnote omitted) (second and third sets of brackets in original). "Accordingly, if a plaintiff asserts jurisdiction under Section 1-75.4(1)(d), the United States Court of Appeals for the Fourth Circuit has held that the 'two-prong test merges into the single question whether [the plaintiff] has made a prima facie showing that [the defendant] had sufficient contacts with North Carolina to satisfy constitutional due process.'" *Wolfe Fin.*, 2019 WL 203183, at *5 (quoting *Universal Leather*, 773 F.3d at 558–59).[1]

Turning to due-process requirements,

> a court may assert jurisdiction over a non[-]resident defendant through either of two independent avenues. First, a court may find specific jurisdiction based on conduct connected to the suit. If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. Second, a court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of "continuous and systematic" activities in the forum state.

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012) (internal citation and quotation marks omitted). Notably,

> [the Fourth Circuit] ha[s] synthesized the due[-]process requirements for asserting specific personal jurisdiction into a three-prong test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff[']s[] claims arise out of those activities

---

[1] Plaintiff impliedly invoked Section 1-75.4(1)(d), by relying on the proposition that "North Carolina's long-arm statute is intended to assert personal jurisdiction to the full extent permitted by the Due Process Clause" (Docket Entry 15 at 9 (quoting *IHFC Props.*, 850 F. Supp. 2d at 616 (discussing N.C. Gen. Stat. § 1-75.4(1)(d)))).

-7-

directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351–52 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).

As concerns the first prong, "purposeful availment," the Court weighs the following factors:

(1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Ent., LLC v. Associated Broad. Co. P., 911 F.3d 192, 198–99 (4th Cir. 2018). Under the second prong, "the defendant's contacts with the forum state [must] form the basis of the suit." Consulting Eng'rs, 561 F.3d at 278–79. Finally, factors relevant to the third prong

include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id. at 279.

-8-

**B. Analysis**

According to Defendant, neither general nor specific personal jurisdiction exists under the circumstances. (<u>See</u> Docket Entry 11 at 4-12.) In that regard, Defendant has contended that his status as a New York domiciliary and his lack of connections with North Carolina render general jurisdiction inapplicable. (<u>See</u> <u>id.</u> at 4-5.) As far as specific jurisdiction, Defendant has argued that his limited or unrelated business dealings in North Carolina do not constitute purposeful availment for purposes of this action. (<u>See</u> <u>id.</u> at 5-8.) Relatedly, to the extent Defendant has transacted in North Carolina at all, he has maintained that such activities do not form the basis of Plaintiff's claim. (<u>See</u> <u>id.</u> at 6-9.) Per Defendant, the exercise of personal jurisdiction qualifies as constitutionally unreasonable because (i) litigating in North Carolina would burden Defendant and his witnesses (<u>see</u> <u>id.</u> at 9-11), (ii) North Carolina possesses little interest in this matter (<u>see</u> <u>id.</u> at 11), (iii) Plaintiff may obtain convenient and effective relief in New York, where he regularly travels (<u>see</u> <u>id.</u>), (iv) both North Carolina and New York share an interest in efficient resolution (<u>see</u> <u>id.</u> at 11-12), and (v) "no substantive policy of either North Carolina or New York . . . would be furthered by litigating this case in North Carolina" (<u>id.</u> at 12).

In response, Plaintiff has relied on the Operating Agreement, which contains a North Carolina choice-of-law clause and provides for arbitration in Durham County, North Carolina in the event of a "dispute arising out of or in connection with [the Operating]

-9-

Agreement or the breach thereof" (Docket Entry 15 at 3 (quoting Docket Entry 15-1, ¶ 12.6)). (See id. at 6–8.) According to Plaintiff, the Operating Agreement dooms any challenge by Defendant to personal jurisdiction in this action. (See id.) In any event, Plaintiff has argued that Defendant possesses sufficient minimum contacts with North Carolina because (i) Defendant possessed an ownership interest in a North Carolina limited liability company when Plaintiff loaned money to Defendant (id. at 10–11), (ii) Defendant initiated the formation of T-Bird Partners and discussed the business with Plaintiff while present in North Carolina (id. at 11), (iii) Defendant requested loans from Plaintiff, which Plaintiff funded from North Carolina bank accounts (id.), (iv) North Carolina law applies to the dispute, given the choice-of-law provision in the Operating Agreement (id. at 12–13), and (v) the T-Bird Contract and the 2019 Contract involved performance in North Carolina (id. at 13).

Regarding the second due-process prong, Plaintiff has maintained that this dispute arises from Defendant's contacts with North Carolina, including the formation and breach of the T-Bird Contract, as well as Defendant's efforts to enlist Plaintiff's services at the Meeting. (See id. at 14–15.) Finally, per Plaintiff, the exercise of specific personal jurisdiction passes constitutional standards because Defendant failed to repay loans from a North Carolina citizen to capitalize T-Bird Partners (id. at 17–18) and because Defendant "induc[ed] Plaintiff to leave North Carolina to provide valuable services at the . . . Meeting in

-10-

exchange for Defendant's promise to finally pay off his North Carolina loans" (id. at 18).

As an initial matter, the Court should decline to conclude that Defendant waived any objection to personal jurisdiction based on the forum-selection clause in the Operating Agreement. That clause states, in full, as follows:

> This Agreement is made in Durham County, North Carolina and the rights and obligations of the Members hereunder shall be interpreted, construed and enforced in accordance with the laws of the State of North Carolina. Any dispute arising out of or in connection with this Agreement or the breach thereof shall be decided <u>by arbitration</u> to be conducted in Durham County, North Carolina in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association, and judgment thereof may be entered in any court having jurisdiction thereof.

(Docket Entry 15-1, ¶ 12.6 (emphasis added).)

"[A] valid forum[-]selection clause . . . may act as a waiver to objections to personal jurisdiction." <u>Consulting Eng'rs</u>, 561 F.3d at 281 n.11. However, courts generally have discerned no such waiver when parties merely agreed to arbitrate, rather than litigate, in a particular forum. <u>See</u> <u>Krones, Inc. v. Bomatic, Inc.</u>, No. 13-C-935, 2014 WL 4338718, at *6-7 (E.D. Wis. Aug. 29, 2014) (unpublished) (noting lack of controlling authority "addressing whether an arbitration clause can be construed as impliedly consenting to personal jurisdiction" before rejecting such construction); <u>United Fin. Mortg. Corp. v. Bayshores Funding Corp.</u>, 245 F. Supp. 2d 884, 892-93 (N.D. Ill. 2002) (deeming forum-selection clause pertaining to arbitration insufficient to confer personal jurisdiction and collecting cases); <u>see also</u> <u>Traton News,</u>

-11-

LLC v. Traton Corp., 528 F. App'x 525, 528 (6th Cir. 2013) ("A forum[-]selection clause confers personal jurisdiction on a court over only those disputes that the parties agreed to litigate in that forum."). "[Plaintiff] has not brought an arbitration proceeding, and [the Operating Agreement] could have included a forum[-]selection clause for litigation but did not," Krones, Inc., 2014 WL 4338718, at *7.[2] Moreover, the Operating Agreement's choice-of-law clause selecting North Carolina law (alone, at least) fails to establish Plaintiff's consent to this Court's jurisdiction. See Consulting Eng'rs, 561 F.3d at 281 ("The inclusion of a choice[-]of[-]law clause is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that.").

Turning to whether Plaintiff has made a prima facie showing of personal jurisdiction, the Court should conclude that due process authorizes the exercise specific personal jurisdiction over Defendant.[3] Beginning with purposeful availment, sufficient

---

[2] To the extent Defendant has suggested that the forum-selection clause operates to "deprive the Court of jurisdiction to hear [matters within the scope of that clause, to include] this action" (Docket Entry 19 at 3), the Fourth Circuit has held otherwise (albeit in an unpublished opinion), see Schwartz v. Coleman, 833 F.2d 310 (table), 1987 WL 38184, at *2 (4th Cir. Nov. 3, 1987) (unpublished) ("Despite the strong federal policy favoring arbitration, the Federal Arbitration Act, 9 U.S.C. §§ 1-13, does not deprive federal courts of otherwise possessed subject[-]matter jurisdiction over disputes that are subject to binding agreements to arbitrate, and that may indeed be in arbitration.").

[3] Plaintiff has not argued that general personal jurisdiction exists under the circumstances (see Docket Entry 15 at 8–18 (discussing only specific personal jurisdiction)), and Defendant
(continued...)

-12-

minimum contacts exist between Defendant and North Carolina based on Defendant's initiation of business activity in the forum, to include Defendant's promise to repay Plaintiff under the T-Bird Contract. Although "a contract in and of itself does not automatically constitute sufficient minimum contacts to support personal jurisdiction," Ellicott Mach. Corp. v. John Holland Party, Ltd., 995 F.2d 474, 478 (4th Cir. 1993), such jurisdiction remains appropriate here in light of Defendant's actions before the T-Bird Contract, his obligations under that agreement, and the nature of the transaction, see FRS, Inc. v. Carim, LLC, No. 3:05CV521, 2006 WL 1967387, at *4 (W.D.N.C. July 12, 2006) (unpublished) (finding purposeful availment when litigant received loan, promised to repay, and conducted marketing activities in relevant forum).

In that regard, Plaintiff has averred that Defendant solicited Plaintiff's involvement in forming a North Carolina limited liability company, the funding of which occurred, in part, via loans from Plaintiff's North Carolina bank accounts. (See Docket Entry 15-2, ¶¶ 3-5, 7-9.) Defendant thus promised to perform (i.e., to repay) in the forum state in connection with his obligations as a part-owner of T-Bird Partners, a company based in

---

[3](...continued)
correctly has noted that his domicile in New York forecloses the exercise of general personal jurisdiction by another forum (see Docket Entry 11 at 4-5 (citing Pandit v. Pandit, 808 F. App'x 179, 181-84 (4th Cir. 2020))). See also Pandit, 808 F. App'x at 184 (rejecting general personal jurisdiction based on "home away from home" theory); Reddy v. Buttar, No. 3:18-cv-172, 2019 WL 2106082, at *4 & n.3 (W.D.N.C. May 14, 2019) (unpublished) (concluding that domicile constitutes sole basis for asserting general personal jurisdiction over individual).

-13-

North Carolina for approximately a decade (see id., ¶ 13).
Additionally, Plaintiff has sworn that Defendant "made in-person
contact with [Plaintiff] regarding the business relationship,"
Sneha Media & Ent., LLC, 911 F.3d at 198-99, on at least one
occasion (id., ¶ 15) and that, in August 2019, the parties spoke by
telephone twice to discuss Defendant's plan for repaying his debt
(id., ¶¶ 17, 19).[4]

Next, considering whether "[P]laintiff's claims arise out of
the activities [Defendant] directed at the forum," Consulting
Eng'rs, 561 F.3d at 278, the Court should determine that the
requisite relationship exists. "[E]ven one isolated contact may
give rise to jurisdiction if that contact is related to the cause
of action and is sufficiently purposeful in its aim at the forum
state," Occidental Fire & Cas. Co. v. Continental Ill. Nat'l Bank
& Tr. Co., 689 F. Supp. 564, 568 (E.D.N.C. 1988); see also Akeva
L.L.C. v. Mizuno Corp., 199 F. Supp. 2d 336, 339 (M.D.N.C. 2002)
("Specific jurisdiction can arise out of even a single contact with
the forum state if the claim 'arises out of' that contact."). 
Here, Plaintiff's claims derive from the loans he issued after
Defendant secured Plaintiff's agreement to participate in a
business venture based in North Carolina. Plaintiff has alleged

_____

[4]    The Court should decline to rely on the choice-of-law
provision in the Operating Agreement for purposes of personal
jurisdiction, as Plaintiff's claims stem from the alleged breach of
separate agreements between Plaintiff and Defendant. (See Docket
Entry 1, ¶¶ 10-19 (describing T-Bird Contract); id., ¶¶ 24-41
(referencing 2019 Contract); id., ¶¶ 42-70 (lodging four claims
based on foregoing contracts and omitting any mention of Operating
Agreement).)

-14-

(and supported via Plaintiff's Declaration) relatively few communications by Defendant, but the promises that Plaintiff has sought to enforce arise out of those contacts.

Lastly, as concerns the third-prong factors, "such an analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent," CFA Inst. v. Institute of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009) (internal quotation marks omitted). Here, Defendant faces no such "severe disadvantage" given his relative proximity to North Carolina. See Fallon Luminous Prods. Corp. v. Multi Media Elecs., Inc., 343 F. Supp. 2d 502, 508 (D.S.C. 2004) (deeming exercise of personal jurisdiction consistent with due process when plaintiff initiated lawsuit in South Carolina against defendant based in New York). Additionally, "[North Carolina] has a paternal interest [in this action]," Lee v. Walworth Valve Co., 482 F.2d 297, 299 (4th Cir. 1973), because Plaintiff (a North Carolina citizen) has lodged common-law claims (see Docket Entry 1, ¶¶ 42-70) concerning Plaintiff's alleged right to repayment from Defendant.[5] Although

_____

[5] North Carolina would possess an even stronger interest in this action if North Carolina law applies, an issue that the parties have disputed. (See Docket Entry 11 at 15 ("At this point, it is uncertain which State's law will apply to this matter."); Docket Entry 15 at 16-17 & n.1 (asserting that North Carolina substantive law governs Plaintiff's claims).) "[F]ederal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit." Griffin v. McCoach, 313 U.S. 498, 503 (1941). "Under North Carolina common law, the rule of lex loci contractus controls. That rule focuses on the state where the contract was entered into or the state where
(continued...)

-15-

Plaintiff likely could obtain relief in New York, where some purportedly relevant events took place (to include Plaintiff's performance of the 2019 Contract and Defendant's failure to tender payment in accordance with that agreement), nothing in the record renders this Court's exercise of jurisdiction constitutionally unreasonable. As Plaintiff has contended, "Defendant cannot reasonably argue that he could not have anticipated being sued in North Carolina if he failed to repay business loans provided to him from a North Carolina resident to capitalize a North Carolina [limited liability company]" (Docket Entry 15 at 17).

In sum, applying standards applicable at this juncture, the exercise of specific personal jurisdiction over Defendant by this Court comports with due-process principles.

## II. Transfer

### A. Relevant Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," 28

---

⁵(...continued)
the contract was to be performed." In re Nantahala Village, Inc., 976 F.2d 876, 881 n.7 (4th Cir. 1992) (internal citations omitted). Here, the Court should apply North Carolina choice-of-law principles because Plaintiff has invoked the Court's diversity jurisdiction. (See Docket Entry 1, ¶ 5.) The record fails to establish where Plaintiff and Defendant "made" the pertinent agreements (the T-Bird Contract and the 2019 Contract), but performance of the T-Bird Contract occurred (or should have occurred) in North Carolina, whereas the 2019 Contract appears to bear a closer relationship to New York. In any event, because the source of governing law does not constitute a determinative factor in the personal-jurisdiction analysis, the Court need not resolve such question at this stage.

U.S.C. § 1404(a). "Upon consideration of [a] motion to transfer venue, th[e] Court must make two inquiries: (1) whether [the plaintiff's] claims might have been brought in the [transferee court], and (2) whether the interest of justice and the convenience of the parties [and witnesses] justify transfer to [such] district[]." LG Elecs. v. Advance Creative Comput. Corp., 131 F. Supp. 2d 804, 809 (E.D. Va. 2001). "The phrase 'where it might have been brought' in [S]ection 1404(a) refers to a forum where venue originally would have been proper for the claim and where a defendant originally would have been subject to personal jurisdiction." Kotsonis v. Superior Motor Express, 539 F. Supp. 642, 645 (M.D.N.C. 1982).[6]

To assess convenience of the parties and witnesses, as well as the interest of justice, the Court considers the following discretionary factors:

(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and

---

[6]     No party has addressed whether the Southern District of New York qualifies as a venue where this action "might have been brought," Kotsonis, 539 F. Supp. at 645 (quoting 28 U.S.C. § 1404(a)).  (See Docket Entry 11 at 12-16; Docket Entry 15 at 18-23; Docket Entry 19 at 8-10.)  The applicable statute provides, in relevant part, that "[a] civil action may be brought in . . . a judicial district in which any defendant resides," 28 U.S.C. § 1391(b)(1).  The Southern District of New York encompasses Westchester County, 28 U.S.C. § 112(b), where Defendant resides (Docket Entry 10-1, ¶ 6), thus rendering such venue proper.  Defendant's averment as to his New York domicile (id.) also renders him subject to personal jurisdiction in such forum.

-17-

> obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9 local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of law.

Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 802-03 (M.D.N.C. 2008) (quoting Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996)). The movant must prove that the balance of factors favors transfer. See id. at 803.

### B. Analysis

Defendant has argued, as an alternative to dismissal, that the Court should transfer this action to the Southern District of New York pursuant to Section 1404(a). (See Docket Entry 11 at 12.) In particular, Defendant has emphasized that Plaintiff's initial choice of forum merits less weight when the action bears little relation to the forum. (Id. at 13.) Additionally, according to Defendant, all of his anticipated witnesses reside in New York, "beyond the subpoena power of this Court," (id. at 14). Defendant also has contended that "[t]he issue of enforceability of a judgment favors transfer" (id.), that North Carolina possesses little interest in the operative events (id.), and that other public-interest factors render New York a more suitable forum (see id. at 14-16).

Plaintiff has opposed transfer, asserting that the Operating Agreement's forum-selection clause defeats such request. (See

-18-

Docket Entry 15 at 18.) Furthermore, Plaintiff has maintained that Defendant failed to carry his burden to establish the appropriateness of transfer, insofar as (i) Plaintiff filed suit in his home forum, a choice entitled to deference (id. at 19-20), (ii) this action relates to Defendant's contacts with North Carolina (id. at 20), and (iii) North Carolina possesses a substantial interest in a dispute "involv[ing] a contractual agreement formed in North Carolina and governed by North Carolina law whose purpose and effect was to capitalize a North Carolina [entity with an in-state] principal office" (id. at 20-21). In addition, Plaintiff has identified four potential witnesses that reside in North Carolina and another who "travels to North Carolina multiple times a year and would not be inconvenienced if called as a witness." (Id. at 21-22.) As concerns court congestion and other practical factors, Plaintiff has argued that the backlog of cases and impact of the COVID-19 pandemic favor retention and that transfer would merely shift party and witness inconvenience from Defendant to Plaintiff. (Id. at 22.)

At the threshold, the Court should decline to view the Operating Agreement's forum-selection clause as effecting a waiver of Defendant's right to request a Section 1404(a) transfer. As a general matter, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Atlantic Marine Constr. Co. v. United States Dist. Ct., 571 U.S. 49, 64 (2013). When such

-19-

waiver occurs, courts "consider arguments about public-interest factors only." Id. A litigant also may "waive[] its right to arbitrate when it initially pursues litigation and then reverses course and attempts to arbitrate," Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., 304 F.3d 476, 484 (5th Cir. 2002) (internal quotation marks omitted).

Here, by maintaining that the Operating Agreement's forum-selection clause constitutes a waiver by Defendant, Plaintiff has implicitly asserted that (i) the Operating Agreement applies to Plaintiff's claims,[7] and (ii) Plaintiff may decline to arbitrate but nonetheless elect to enforce only the part of the Operating Agreement selecting Durham, North Carolina as the arbitration locale. (See Docket Entry 15 at 18.) Because Plaintiff has failed to develop an argument in support of such selective enforcement (see id.) and has initiated litigation, not arbitration, the Court should decline to find waiver by Defendant and instead should consider both the private and public-interest factors under Section 1404(a).

However, based on the below assessment of such factors, the Court should retain jurisdiction over this action.

---

[7] The applicability of the Operating Agreement remains uncertain, especially because (i) Plaintiff has attempted to enforce separate agreements between Plaintiff and Defendant, and (ii) T-Bird Partners dissolved and no longer exists.

-20-

1. Party Convenience[8]

"Generally, a plaintiff's choice of forum is entitled to substantial weight." Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001). Courts should not disturb such choice "unless the balance is strongly in favor of the defendant." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (internal quotation marks omitted). However, "[t]he weight given [to] the plaintiff's choice varies in proportion to the connection between the forum and the cause of action. Thus, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 2001). Courts also look to whether the "operative facts have [a] material connection with the chosen forum." Acterna, 129 F. Supp. 2d at 938. As a general matter, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." Board of Trs. v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1259 (E.D. Va. 1988); see also Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp., 227 F. Supp. 2d 581, 585 (E.D. Va. 2002)

---

[8]    Apart from references to availability of witnesses (addressed in the next subsection), neither party has discussed the "relative ease of access to sources of proof," Speed Trac Techs., 567 F. Supp. 2d at 803, or the "possibility of a view of the premises," id., two factors that may affect party convenience. (See Docket Entry 11 at 12–16; Docket Entry 15 at 18–23; Docket Entry 19 at 8–10.)  Neither consideration carries weight under the circumstances.  To the extent Plaintiff's claims depend on any documentary evidence, such materials lend themselves to portability; coordinately, no view of any premises appears necessary.

-21-

("A mere shifting of the burden neither weighs in favor of retaining nor of transferring venue.").

Here, Plaintiff's initial choice of forum deserves substantial weight because Plaintiff has chosen his home forum[9] and because the "operative facts," id., show that North Carolina bears a material connection to the T-Bird Contract and the 2019 Contract, the bases for Plaintiff's claims. At a minimum, both agreements relate to Defendant's debt to Plaintiff arising from the capitalization of a North Carolina company in which Defendant possessed an ownership interest. Moreover, because transfer would merely shift burdens from Defendant to Plaintiff, factors related to Defendant's convenience cannot overcome Plaintiff's initial choice of forum.

2. Witness Convenience

"When considering the ease of access to sources of proof, courts consider the availability of witnesses and other evidence for trial." IHFC Props., 850 F. Supp. 2d at 623. "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).[10]

---

[9]    Plaintiff has averred that his residence lies in Orange County (Docket Entry 15-2, ¶ 2), within the Middle District of North Carolina, 28 U.S.C. § 113(b).

[10]   "Although the moving party bears the ultimate burden of establishing the propriety of transfer, courts have imposed the burden of proffering details about witnesses and potential (continued...)

Additionally, "[t]o support [a] request for transfer under [S]ection 1404(a), a moving party must demonstrate (through affidavits or otherwise) . . . whether [a non-resident] witness is willing to travel to a foreign jurisdiction." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., 196 F. Supp. 2d 21, 33 (D.D.C. 2002). "Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." Samsung Elecs. Co. v. Rambus Inc., 386 F. Supp. 2d 708, 719 (E.D. Va. 2005).

Here, Defendant has averred that all five of his potential witnesses reside in New York. (See Docket Entry 10-1, ¶¶ 10-11.) In similar fashion, Plaintiff's Declaration identifies seven potential witnesses, four of whom live in North Carolina. (See Docket Entry 15-2, ¶¶ 26-27.) Of the remaining three individuals who may testify for Plaintiff (each of whom Defendant also has identified as a potential witness), one (Plaintiff's and Defendant's father) visits North Carolina frequently, and two travel to North Carolina occasionally. (See id.) However, because neither affidavit offers details about the materiality of such witness testimony, the degree of inconvenience, or any witness's willingness to travel to a foreign forum (see id.; Docket Entry 10-1, ¶¶ 10-11), the Court cannot meaningfully compare the suitability

---

[10](...continued)
testimony to non-moving parties who oppose transfer on the ground of witness inconvenience." D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 780 n.17 (D. Md. 2009).

-23-

of the two fora on this front.  As a result, this factor remains neutral.

### 3. Interest of Justice[11]

The "interest of justice" inquiry "encompass[es] those factors unrelated to witness and party convenience."  Acterna, 129 F. Supp. 2d at 939–40.  As mentioned previously, Defendant has focused on the "enforceability of a judgment" (Docket Entry 11 at 14), "local interest" (id.), "court congestion" (id.), source of governing law (id. at 15), and "other practical problems" (id.).  More specifically, Defendant has asserted that (i) he lacks assets in North Carolina, such that a court in this forum could not enforce a judgment against him (id. at 14), (ii) New York possesses an interest in Defendant's alleged payment obligation arising from the Meeting (id.), (iii) court congestion fails to clearly favor either transfer or retention of this action (id. at 14–15), (iv) the source of governing law remains undetermined but no complex or novel legal issues would impede adjudication in either New York or North Carolina (id. at 15), and (v) a North Carolina trial would cause Defendant and his witnesses to incur more expenses than would Plaintiff in a New York trial (id. at 15–16).

Turning first to the enforceability of a potential judgment against Defendant, Plaintiff has suggested that "it will not be

---

[11] Neither party has suggested that any "obstacles to a fair trial," Speed Trac Techs., 567 F. Supp. 2d at 803, exist in either forum.  (See Docket Entry 11 at 12–16; Docket Entry 15 at 18–23; Docket Entry 19 at 8–10.)  Thus, the Court need not dwell on that factor.

-24-

difficult to domesticate a North Carolina judgment against Defendant in Wyoming or New York" (Docket Entry 15 at 21).[12] Indeed, "[a] judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. Moreover, "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Id. As a result, Defendant's non-specific comments about enforceability provide little if any support for transfer.

Regarding New York's interest in this matter, as a general proposition, "[c]ourts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events," Speed Trac Techs., 567 F. Supp. 2d at 804. Although New York bears a closer connection to some of the more recent events and communications (including the 2019 Contract and the Meeting), Plaintiff's claims originated in North Carolina, to the extent that Defendant's plan to create a North Carolina entity required a loan from Plaintiff, a North

_____

[12] Defendant has averred to "splitting [his] time" between his home in New York and Jackson, Wyoming, due to the COVID-19 pandemic. (Docket Entry 10-1, ¶ 6.)

-25-

Carolina citizen.  Therefore, such consideration supports retaining this action.

Next, although "[t]he relative docket conditions are considered in weighing the interest of justice, [they] are not given great force." Samsung Elecs. Co., 386 F. Supp. 2d at 723. Defendant has highlighted statistics reflecting median time from filing to disposition, caseload per judge, and cases over three years old.  (See Docket Entry 11 at 14–15.)  Only the first of those factors favors transfer, insofar as cases in the Southern District of New York boast a median disposition time three months faster than cases in the Middle District of North Carolina.  (See id. at 15.)  However, judges in the Southern District of New York must handle more cases (on a per-judge basis), and thousands of their cases have remained on those dockets for longer than three years (as compared to a figure in the hundreds in the Middle District of North Carolina).  (See id.)  Accordingly, relative docket conditions afford meager support for Defendant's transfer request.

As concerns the source of governing law, Defendant has declined to indicate which forum's substantive law applies.  (See id. at 15.)  For his part, Plaintiff has maintained that North Carolina substantive law governs because "the last act to form a binding contract under all of Plaintiff's alternative claims for relief occurred in North Carolina" (Docket Entry 15 at 16).  As mentioned in a footnote above, North Carolina choice-of-law rules apply to this diversity action.  See Griffin v. McCoach, 313 U.S.

-26-

498, 503 (1941). "[U]nder North Carolina law, substantive questions of contract construction and interpretation are governed by the law of the state where the contract was made." Piedmont Hawthorne Aviation, Inc. v. TriTech Env't Health & Safety, Inc., 402 F. Supp. 2d 609, 617 (M.D.N.C. 2005). "[T]he place at which the last act was done by either of the parties essential to a meeting of the minds determines the place where the contract was made." Suitt Constr. Co. v. Seaman's Bank for Sav., 30 N.C. App. 155, 159, 226 S.E.2d 408, 410 (1976). "[T]he acceptance by one party of the other party's offer is usually the 'last act' to formation of a contract, and courts have generally identified the location of this acceptance as the location of contract formation." State ex rel. Cooper v. Western Sky Fin., LLC, No. 13CVS16487, 2015 WL 5091229, at *8 (N.C. Super. Ct. Aug. 27, 2015) (unpublished).

Here, some uncertainty remains about where the parties "made" the relevant contracts (i.e., their respective locations at the time of the "last act" or acceptance). (See, e.g., Docket Entry 15-2, ¶¶ 7-9 (describing loans without discussing mechanics of offer and acceptance).) Plaintiff has averred as to his physical presence in North Carolina when he loaned the funds under the T-Bird Contract (id., ¶ 9) and when he purchased his plane ticket for the Meeting (id., ¶ 21) in connection with the 2019 Contract. However, such actions may constitute Plaintiff's performance of his contractual obligations rather than his acceptance of the same. See Prentzas v. Prentzas, 260 N.C. 101, 104, 131 S.E.2d 678, 681 (1963) ("Agreements are reached by an offer by one party and an

-27-

acceptance by the other."). The record further fails to clarify which party qualifies as promisee and promissor, <u>see</u> Restatement (Second) of Contracts § 2 (Am. L. Inst. 1981). In any event, the Court need not decide the choice-of-law question because, even if New York substantive law governs all pertinent agreements in this action, such factor cannot overcome the countervailing considerations disfavoring transfer.

Finally, with respect to the relative time and expense of travel, which Defendant has characterized as "[an]other practical problem[]" (Docket Entry 11 at 15), Defendant has failed to demonstrate the superior suitability of New York, other than to suggest that "[Plaintiff] travels to New York regularly in connection with the numerous other family business ventures located in New York and to visit New York-based relatives" (<u>id.</u> at 16). Requiring Plaintiff to make additional trips to New York for litigation still constitutes a form of shifting the burden from Defendant to Plaintiff, which (as discussed in connection with party convenience) cannot justify transfer under the circumstances.

For the foregoing reasons, Defendant has failed to carry his burden in support of the transfer request. Accordingly, this action should remain in the Middle District of North Carolina.

<u>**CONCLUSION**</u>

Under pretrial review standards, the Court may exercise specific personal jurisdiction over Defendant consistent with due-process principles. The balance of factors under Section 1404(a) weighs against transfer, particularly in light of the deference

-28-

owed to Plaintiff's initial choice of forum and the connection between Plaintiff's claims and North Carolina.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion (Docket Entry 10) be **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 7, 2021